IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

DAVID SLOAN,

        Plaintiff,

v.                                                       Case 2:12-cv-02515-JDT-cgc

BOARD OF EDUCATION OF
THE MEMPHIS CITY SCHOOLS;
KRINER CASH, in his individual
and official capacities; and, TOMEKA
HART, President, in her official capacity,

        Defendants.

---

**REPORT AND RECOMMENDATION ON DEFENDANT BOARD OF EDUCATION OF THE MEMPHIS CITY SCHOOLS' MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant Board of Education of the Memphis City Schools' ("MCS") Motion for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry "D.E." #42).[1] For the reasons set forth herein, the Magistrate Judge RECOMMENDS that MCS's Motion for Summary Judgment be GRANTED.

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order 13-05 pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

1

**I. Background**

This action arises from allegations that Plaintiff experienced discrimination on the basis of race in his application to be re-hired as a mathematics teacher with MCS. On March 23, 2010, Plaintiff completed a Charge of Discrimination ("EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC"), setting forth his allegations of discrimination as follows:

> On or about December 11, 2009, I was denied re-hire for a Certified Classroom Teacher position. I was informed via email that I was eligible for re-hire and interviewed December 1, 2009 during a group interview of 20 applicants. Most of the interviewees were not within the protected age group.
>
> I previously worked for the school system as a Classroom Teacher from 2004 through 2008 with an Interim B license. On or about July 1, 2008, I was discharged for not having a valid certification license. The school system refused to renew my Interim B license. I obtained my Apprentice license in March 2009 and am listed as highly qualified to teach at the middle school level of education. Anita Louise Price, a younger, Black, Classroom Teacher, was allowed to continue her employment with the school system although she only had an Interim B license. Price obtained her Apprentice license about August 2009.
>
> I believe that I have been discriminated against because of my race (White) and age (42), in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967 (ADEA).

(Pl.'s Resp. to MCS's Mot. to Dismiss, Exh. J, filed at D.E. #23-10). The EEOC Charge was stamped as received on April 2, 2010. (*Id.*) On July 11, 2011, the EEOC issued its Dismissal and Notice of Rights ("EEOC Notice"), which stated that the EEOC was unable to conclude that the information obtained established a violation of the statutes and informed Plaintiff of his right to sue as follows:

> **Title VII . . . or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice,** or your right to sue based on this charge will be lost. . . .

(*Id.*)

2

On October 7, 2011, it appears from the Court's electronic filing system ("ECF") that Plaintiff attempted to initiate a *pro se* case; however, the docket's only entry reflects "[n]o initiating documents filed." *David Sloan v. Board of Education of the Memphis City Schools*, No. 2:11-cv-02884 (W.D. Tenn., filed Oct. 7, 2011). Also on October 7, 2011, a Complaint was filed on Plaintiff's behalf by Attorney Richard B. Fields ("October 7, 2011 Complaint"). *David Sloan v. Board of Education of the Memphis City Schools*, No. 2:11-cv-02886 (W.D. Tenn., filed Oct. 7, 2011). The October 7, 2011 Complaint alleged employment discrimination on the basis of race and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII") and violations of 42 U.S.C. § 1981 ("Section 1981") and § 1983 ("Section 1983") against the following defendants: MCS; Kriner Cash ("Cash"), Superintendent of MCS; Tomeka Hart ("Hart"), President of MCS; the EEOC; and Kathy Kores ("Kores"), District Director. (Oct. 7, 2011 Compl. at 1).

On March 7, 2012, the District Court entered an Order to Show Cause in the case initiated by the October 7, 2011 Complaint. The District Court advised Plaintiff that Rule 4(m) requires a defendant to be served within 120 after the complaint is filed and that 152 days had elapsed in Plaintiff's case without service of process. The District Court ordered Plaintiff to show cause by March 21, 2012 why the case should not be dismissed pursuant to Rule 4(m) for failure to effectuate service of process.

On March 19, 2012, Plaintiff filed a *pro se* letter in response to the Order to Show Cause. He stated that it was his "intention to preserve and uphold" his case. He stated that he was under the understanding that his attorney "had served the named defendants via certified mail and had not received a response." He further stated that he was under the understanding that his attorney "intended to personally serve all of the named defendants." He asserted that, since receiving the

Order to Show Cause, he had called his attorney "many times, leaving voice messages" but that he had "not received any form of response." Plaintiff requested that his "case remain open" and that he be permitted an extension to consider his "options for legal representation." On March 23, 2012, the District Court entered an Order of Dismissal Without Prejudice pursuant to Rule 4(m) for failure to effectuate service of process and a Judgment.

On June 29, 2012, Plaintiff filed the instant *pro se* Complaint initiating this case ("June 29, 2012 Complaint"). Plaintiff named as defendants the following entities and individuals: MCS; Cash, in his individual and official capacities; Hart, in her individual and official capacities; the EEOC; and, Kores, in her individual and official capacities.[2] The June 29, 2012 Complaint alleges discrimination on the basis of race and retaliation in violation of Title VII and violations of Section 1981 and Section 1983. The June 29, 2012 Complaint is identical to the October 7, 2011 Complaint, with the exception of corrections of minor typographical errors. The June 29, 2012 Complaint further reiterates the allegation in the October 7, 2011 Complaint that it was "filed within 90 days" (June 29, 2012 Compl. ¶ 2), although it was actually filed nearly one year after the EEOC Notice was issued.

On June 5, 2013, MCS filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. MCS argued that Plaintiff's Title VII claims in his June 29, 2012 Complaint must be dismissed as a matter of law for failure to timely file within ninety days of the EEOC Notice. Alternatively, MCS argued that Plaintiff's June 29, 2012 Complaint failed to allege facts to support a plausible inference of racial discrimination or retaliation under Title VII

---

[2] Plaintiff's June 29, 2012 Complaint does not explicitly state whether Kores was sued in her individual and/or official capacities; however, the District Court construed the June 29, 2012 Complaint as being against Kores in both capacities in its November 16, 2012 Order Granting Motion to Remove Certain Defendants.

4

and failed to allege a prima facie case of race discrimination under Title VII. MCS's Motion to Dismiss did not address Plaintiff's Section 1981 or Section 1983 claims.

On July 2, 2013, Plaintiff filed his Response to MCS's Motion to Dismiss. Plaintiff argued that his case should be considered as timely filed based upon the filing of his October 7, 2011 Complaint.[3] Plaintiff further argued that he filed a complaint with the Board of Professional Responsibility of the Supreme Court of Tennessee ("BPR") for abandonment against his attorney, that the BPR "authorized formal charges against Fields for alleged misconduct," and that Attorney Richard Fields died on April 13, 2012. Plaintiff argued that equitable principles require the Court to permit the filing of his June 29, 2012 Complaint beyond the statutory time period because it was untimely only due to his attorney abandonment and misconduct. Plaintiff's Response included as exhibits documents regarding his representation by Attorney Richard Fields and his BPR charge, as well as other exhibits that he sought the Court to consider in support of his case.

On November 6, 2013, the Magistrate Judge issued a Report and Recommendation recommending that the District Court grant MCS's Motion to Dismiss Plaintiff's Title VII retaliation claim and deny MCS's Motion to Dismiss Plaintiff's Title VII race discrimination claim. (D.E. #25). Further, the Magistrate Judge recommended that the District Court grant Plaintiff leave to amend his June 29, 2012 Complaint to plead his allegations of deficient attorney performance so that the Court could properly consider whether the doctrine of equitable tolling applies to Plaintiff's Title VII discrimination claim. (D.E. #25). The District Court adopted the report and recommendation on December 2, 2013. (D.E. #26).

---

[3] Plaintiff references case number 2:11-cv-02884, which is the case he attempted to initiate *pro se* on October 7, 2011; however, as he discusses the complaint he seeks to refer to as being filed by attorney Richard Fields, it appears to the Court that he is referencing case number 2:11-cv-02886.

5

On November 9, 2013, Plaintiff filed a Motion to Remove Certain Defendants. Namely, Plaintiff sought to remove Hart in her individual capacity, the EEOC, and Kores in her individual and official capacities. On November 16, 2013, the District Court granted Plaintiff's motion pursuant to Rule 41 of the Federal Rules of Civil Procedure. The District Court clarified that the remaining defendants in this case following that Order were MCS, Cash in his individual and official capacities, and Hart in her official capacity.

On December 30, 2013, Plaintiff filed his Amended Complaint ("December 30, 2013 Amended Complaint"). Therein, he continues to allege claims of Title VII race discrimination and violations of Section 1981 and Section 1983; however, the December 30, 2013 Amended Complaint only names MCS and Cash as defendants and omits any mention of Hart. The December 30, 2013 Amended Complaint also adds, as instructed, Plaintiff's allegations that his Title VII discrimination claim should be tolled because of deficient assistance of counsel. (D.E. #27).

On February 2, 2015, MCS[4], Hart,[5] and Cash filed a Motion for Summary Judgment. (D.E. # 42). Defendants argue that the Section 1981 and Section 1983 claims are time-barred by a one-year statute of limitations. Defendants further argue that Plaintiff cannot maintain a cause of action under Section 1983 because he fails to identify the policy that caused his injury. Additionally, Defendants argue that Plaintiff fails to establish a prima facie case for his Title VII race discrimination and Section 1981 claims. With respect to the Title VII race discrimination claims, Defendants argue that they have a legitimate, non-discriminatory reason for their actions

---

[4] MCS filed the instant motion as Shelby County Board of Education ("SCBE") pursuant to the merger of MCS and the Shelby County Schools ("SCS"), which was effective July 1, 2013. SCBE states that the newly combined school district now operates as such. For purposes of clarity, the Court will continue to refer to Defendant as MCS.

[5] Hart joined in the filing of the Motion for Summary Judgment even though she was not named in the December 30, 2013 Amended Complaint.

that Plaintiff cannot establish was merely pretext. Finally, Defendants argue that Cash and Hart are unnecessary and improper parties to the lawsuit.

On February 23, 2015, Plaintiff filed his Response to the instant motion. (D.E. #43). Plaintiff does not directly respond to Defendants' motion and does not cite to the record or relevant case law to support his opposition thereto. Moreover, Plaintiff failed to file a response to the Defendant's Statement of Undisputed Material Facts as required by Local Rule 56.1(b). Instead, Plaintiff argues that Defendants should not have objected to his interrogatories. Plaintiff asserts that he only needs to state inferential allegations for the claim not to be dismissed. Additionally, Plaintiff asserts that his Title VII discrimination claim should be equitably tolled due to abandonment by his former attorney. Finally, Plaintiff asserts that, from his interviewer's recommendation form, it is clear that no facts or qualifications were part of the basis for their decision not to re-hire him.

On March 3, 2015, Defendants filed their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment. (D.E. 44). Defendants' Reply states that Plaintiff's Response was deficient on the following grounds: failure to respond to any of Defendants' arguments as set forth in its Motion for Summary Judgment; failure to cite to the record or present any case law or authority to support his arguments; and, presentation of additional irrelevant arguments. In conclusion, Defendants reassert the arguments raised in their Motion for Summary Judgment.

**II. Proposed Findings of Fact** [6]

Plaintiff is a Caucasian male. (Def.'s Mot. for Summ. J., Exh. A ("Pl.'s Dep.") at 45). He was employed by Tipton County Schools for the 2003-2004 school year. (Pl.'s Dep. at 19; Pl.'s Resp. to Def.'s Interrogatories ¶ 13). He was employed by MCS as a teacher from October 2004 until July 2008. (Pl.'s Dep. at 18-19 & Exh. 3). After leaving MCS in 2008, Plaintiff was employed by SCS as a teacher for the 2008-2009 school year. (Pl. Dep. at 83 & Exh. 3). After the 2008-2009 school year, SCS did not rehire Plaintiff. (Pl. Dep. at 84-85). Plaintiff wrote a letter to Superintendent Dr. Bobby Webb questioning his lack of teaching placement for the upcoming school year but never received a response. (Pl. Dep. at 85-86).

On July 10, 2009, Plaintiff submitted an application for a teaching position with MCS. (Pl.'s Dep. p. 22-23 & Exh. 3). On his application, he did not list any references from SCS. (Pl.'s Dep. at Exh. 3). On November 11, 2009, Plaintiff was instructed to provide an official transcript reflecting his MAT degree as well as a copy of his most recent evaluation from SCS. (Pl.'s Dep. at Exh. 6).

Plaintiff was placed in a "teaching pool" from which the HR staff and principals select teachers. (Pl.'s Dep. at 25). On or about December 11, 2009, Plaintiff participated in various selection processes. (Pl. Dep. at 25, 27-29). First, Plaintiff participated in an information session with numerous other applicants. (*Id.*) Next, Plaintiff completed a written "functional" test regarding how he would respond to certain occurrences at school. (*Id.*) Finally, Plaintiff

---

[6] MCS has filed a Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, as required by Local Rule 56.1(a). However, Plaintiff has failed to respond to MCS's Statement of Undisputed Material Facts, as required by Rule 56.1(b), by either agreeing that the fact is undisputed or by demonstrating that the fact is disputed by a specific citation to evidence in the record. Plaintiff has also not filed any additional disputed material facts of his own but filed his own evidence in opposition to Defendant's Motion for Summary Judgment. As Plaintiff failed to comply with Local Rule 56.1(b), MCS's Statement of Undisputed Material Facts will be deemed to be undisputed.

participated in a fifteen-to-twenty-minute one-on-one interview with Cherith Minnis ("Interviewer"). (*Id*.) Neither the Interviewer nor any individual made any type of comment related to race to Plaintiff during his interview or application process. (Pl.'s Dep. at 61).

After the interview, the Interviewer completed a MCS "Initial Teacher Interview Form." (Pl.'s Dep. at Exh. 5). The Interviewer did not recommend the Plaintiff to be selected as a teacher, reasoning as follows: "I really do not feel comfortable recommending this candidate because I question his commitment to the district. When I compared his application to the District, I saw he left MCS to go to the County but he is now returning to Memphis. Yet he did not list any references from Shelby County. He was supposed to bring in some of his observation forms. Instead, he brought a copy of his Gateway scores to me and stated that 'they are enough proof.' Although I am aware that he has earned his master's degree in teaching, I honestly don't believe that Mr. Sloan has the dedication to remain with Memphis City Schools." (*Id*.) Additionally, the Interviewer rated Plaintiff on the "Commitment" section of the Initial Teacher Interview Form as not fully acceptable. (*Id*.)

The Interviewer noted on the top of the form that the Plaintiff brought his "Appraisal Record" as well as his "transcript for his 2nd masters," an "email from state dept." and his "Gateway Scores." (*Id*.; Pl.'s Dep. at Exh. 7). Plaintiff states that he provided the Appraisal Record because it was the "most recent" component of the complete evaluation, which is what he states was requested from him. (Pl.'s Dep. at 42-43). While Plaintiff believes he provided the documents that he was asked to provide, Plaintiff's file was noted to reflect the he did not provide a complete evaluation. (Pl.'s Dep. at 42-43; Def.'s Mot. for Summ. J., Exh. C). On December 11, 2009, Plaintiff received an email from the Office of Recruitment with MCS stating

9

that he would not be considered for a position for the 2009-2010 school year. (Pl. Dep. at 59 & Exh. 8).

Plaintiff has testified that he has no knowledge, facts or information regarding MCS discriminating against white applicants other than his own personal situation; instead, he states that he believes he was discriminated on the basis of race because there were "unlicensed, undereducated teachers . . . hired at the same time and place," although he admits that he does not know if these individuals applied for the same position or went through the same selection process. (Pl. Dep. at 46, 57-58, 65). Further, Plaintiff has not identified any policy or custom that allegedly caused his injury but states that it appears to him that racial discrimination "seemed to be an underlying practice" at least as for "certain people doing certain things" but that he does not know whether it was the practice of the "whole organization" due to its size. (Pl. Dep. at 65-66).

Further, Plaintiff has testified that he has no knowledge about how many minority or non-minority applicants were in the same applicant pool when he interviewed. (Pl.'s Dep. at 44). Plaintiff states that he received a "data-dump" of all teachers that were hired during the same time frame with their name, race, hiring date, and whether they were hired or rehired. (Pl. Dep. at 69). After filing his lawsuit, Plaintiff utilized this "data-dump" list to research some of these individuals on the internet and check their licensure information. (Pl.'s Dep. at 69-72). Ultimately, Plaintiff identified nine individuals that he felt were hired in place of him: Jennifer Bussey, Scarlett Calhoun, Moses John Bushnell, Alexis Burnett, Felicia Anderson, Camille Anderson, Cassidy Cleaver, Myron Clark, and Gregory Covdige. (Pl.'s Dep. at 68). Plaintiff states that these individuals "were hired during the same timeframe and . . . had lesser qualifications." (Pl.'s Dep. at 68). Finally, Plaintiff states that he does not know whether it was

MCS's intention not to re-hire him based on his race and does not have any information to support that the discrimination was intentional or unintentional. (Pl. Dep. at 61-62, 75).

**III. Proposed Legal Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## IV. Proposed Conclusions of Law

### A. Sections 1981 and 1983

The first issue presented in the instant motion is whether the Plaintiff's Section 1981 and Section 1983 claim are time-barred by the statute of limitations. Neither, statute provides its own statute of limitations.[7] However, federal courts have applied the state's statute of limitations period for personal injuries for both Section 1981 and Section 1983 cause of actions. *Jackson v. Richards Medical Co.*, 961 F.2d 575, 578 (6th Cir. 1992) (statute of limitation period for Section 1981 cause of actions); *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 519 (6th Cir.1997) (statute of limitations period for Section 1983 cause of actions). Tennessee law provides a one year statute of limitation for civil actions brought under federal civil rights statutes. Tenn. Code Ann. 28-3-104(a)(3). Therefore, Plaintiff's Section 1981 and Section 1983 claims must have been brought within one-year from the time the cause of action accrued.

---

[7] The federal catch-all four-year statute of limitation of 28 U.S.C. § 1658(a) does not apply to either claim because each cause of action arises by a pre-1990 enactment. See *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382 (2004).

Generally, the statute of limitation "starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Eidson v. State of Tennessee Dept. of Children's Services*, 510 F.3d 631, 635 (6th Cir. 2007). Upon review of the record, Plaintiff knew or had reason to know of the injury, at the earliest, on or about December 11, 2009, when he received the email informing him that he was not re-hired, which is when the EEOC found to be the earliest date the discrimination occurred (Def.'s Mot. for Summ. J., Exh. J), or, at the latest, on March 8, 2010, when Plaintiff filed his EEOC charge. However, Plaintiff did not file his Complaint until June 29, 2012, which is more than two years after the latest possible date that the statute of limitation period could have begun. Therefore, the one-year statute of limitations for Plaintiff's Section 1981 and Section 1983 claims had expired before he filed his June 29, 2012 Complaint. Accordingly, the Court recommends that Defendant's Motion for Summary Judgment on Plaintiff's Section 1981 and Section 1983 claims be GRANTED.

**B. Title VII Racial Discrimination Claim[8]**

The second issue presented in the instant motion is whether summary judgment is appropriate on Plaintiff's Title VII racial discrimination claim. As Plaintiff has failed to dispute any of the facts set forth by Defendants, the only remaining question is whether Defendants are entitled to summary judgment as a matter of law.

Under Title VII, discrimination on the basis of "race, color, religion, sex, or national origin" constitutes an unlawful employment practice. 42 U.S.C. § 2000e-2(a). A plaintiff may establish a claim of disparate treatment based upon race either by introducing direct evidence of discrimination or by proving circumstantial evidence which would support an inference of

---

[8] The Magistrate Judge recommends that Plaintiff's Title VII cause of action be equitably tolled. The Plaintiff's December 30, 2013 Amended Complaint alleges sufficient facts to permit equitable tolling, and Defendants have not renewed any challenge to equitably tolling this claim in their Motion for Summary Judgment.

discrimination. *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id*.

Under the direct-evidence approach, a plaintiff must present evidence that, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 2000). To successfully pursue a direct-discrimination claim, the evidence must establish, without any inferences or presumptions, that discriminatory motives caused the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 59, 563 (6th Cir. 2000); *see also Brack v. Shoney's, Inc.*, 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003). If the plaintiff introduces evidence of an adverse employment action on the basis of his protected status, the burden of persuasion shifts to the employer to prove that it would have taken the adverse employment action even had it not been motivated by discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989)).

Under the circumstantial evidence approach, the tripartite test established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and later clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to determine if the conduct violated Title VII. However, when the plaintiff is a member of a racial majority and claims employment discrimination on the basis of race, the first and forth prongs are modified. *See Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008); *see* also *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613-14 (6th Cir. 2003). To establish a prima facie case of reverse race discrimination requires proving the following: (1) background circumstances to support the

suspicion that the defendant is that unusual employer who discriminates against the majority; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated, non-protected employees. *Arendale*, 519 F.3d at 603; *Sutherland*, 344 F.3d at 613-14.

If a plaintiff establishes the prima facie case, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this burden, then the plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. *Id*. The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, or that the stated reasons were insufficient to explain the defendant's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

With respect to the direct evidence approach, Plaintiff has not alleged direct discrimination on the basis of race, and there is no evidence in the record that establishes, without any inferences or presumptions, that discriminatory motives caused Plaintiff not to be re-hired as a teacher. Specifically, Plaintiff states that neither the Interviewer nor any other MCS employee made any comment that its decision not to re-hire him was based on race. Further, no MCS employee made any other comments about race whatsoever during the selection process.

With respect to the circumstantial evidence approach, the evidence does not establish a prima facie case of race discrimination under Title VII. With respect to whether background

15

circumstances exist to support the suspicion that MCS is the unusual employer who discriminates against the majority, Plaintiff merely states in his deposition that he has no knowledge, facts or information regarding MCS discriminating against white applicants other than his own personal situation. Plaintiff also opines that it appears to him that racial discrimination "seemed to be an underlying practice" at least as for "certain people doing certain things" but that he does not know whether it was the practice of the "whole organization" due to its size. These suppositions are insufficient to establish the first prong of the prima facie case for reverse race discrimination.

Additionally, with respect to whether Plaintiff was treated differently than similarly situated non-protected employees, Plaintiff has listed nine employees that he believes from information he obtained from MCS that were hired "during the same timeframe and . . . had lesser qualifications."[9] However, the record does not reflect the race of these individuals, their qualifications or alleged lack thereof, whether they applied for the same position, whether they went through the same selection process, or when they were hired or re-hired. Thus, a bare list of nine teachers alleged to be hired at some point of time around the time Plaintiff was not re-hired with no further information is insufficient to establish the third prong of the prima facie case for reverse race discrimination.[10] Accordingly, it is recommended that summary judgment is appropriate in favor of Defendants on Plaintiff's Title VII claim of discrimination on the basis of race. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's Title VII claim be GRANTED.

---

[9] Plaintiff's list of nine individuals does not include the one individual, Anita Louise Price, who he named in his EEOC charge.

[10] As the Magistrate Judge recommends that the evidence does not establish two prongs of the prima facie case, the Court will not continue to consider the remaining steps of the *McDonnell-Douglas* burden-shifting analysis.

## V. Conclusion

For the reasons set forth herein, the Magistrate Judge RECOMMENDS that Defendants' Motion for Summary Judgment (D.E. #42) be GRANTED.

**DATED** this 23rd day of April, 2015.

s/ Charmiane G. Claxton
CHARM IANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**